STATE OF CONNECTICUT *v.* AARON L.[1]
(AC 22450)

Dranginis, Bishop and Hennessy, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom their identities may be ascertained. See General Statutes § 54-86e.

Argued May 28—officially released September 16, 2003

*David T. Grudberg*, with whom was *Ira B. Grudberg*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Kevin Doyle*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Aaron L., appeals from the judgment of conviction, rendered following a

trial to the jury, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[2] On appeal, the defendant claims that (1) the court improperly admitted evidence of and hearsay evidence related to prior uncharged misconduct concerning the defendant, (2) the court improperly restricted his cross-examination of the victim, and (3) the cumulative effect of the court's evidentiary rulings violated his state and federal constitutional rights to confrontation. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts that are relevant to this appeal. The victim was born in 1989, the only child of her mother and the defendant, who never married. The victim's parents continued their relationship for about one year after the victim was born. Since the time that her parents separated, the victim has lived with her mother, but maintained a relationship with the defendant and his family by visiting with them, most often in the home of the defendant's parents. The defendant saw the victim on a weekly basis when he resided in Connecticut, but less frequently between 1992 and 1998, when he resided outside the state. At times, the relationship between the defendant and the victim's mother was contentious due to issues of child support, visitation and the manner in which the victim was to be disciplined.

In the spring of 1999, the defendant, having returned to Connecticut, visited with the victim on weekends at his parents' home, where he and the victim slept in the same bed. During the month of April, 1999, the

[2] The jury acquitted the defendant of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).

defendant entered the bedroom after the victim had retired, got into bed and removed the victim's pajama bottom and underwear. He then used his finger to poke the victim's stomach, legs, inner thigh and the top of her vagina. He also inserted his finger into her vagina. On the first Friday in May, 1999, the victim told her mother that she did not want to visit with the defendant that weekend and confided that the defendant had sexually abused her. The victim's mother confronted the defendant and reported the incident to the police. The defendant subsequently was arrested and charged with multiple counts of sexual assault and risk of injury to a child.

As in many cases of sexual assault involving children, the credibility of the victim and the defendant is often the key decision for the jury to make. In this case, the jury heard evidence that raised concerns about the credibility of both the victim and the defendant. The victim's mother and the defendant's family testified that the victim was known to exaggerate and to be untruthful. The jury also heard evidence that challenged the credibility of the defendant. The jury heard evidence that in 1998, the defendant had told his mother that because he thought that someone else had been sexually abusing the victim, he had checked the victim while she was sleeping for evidence that she had been sexually abused. After the defendant had been arrested, he told one of his brothers that the only thing that had had happened between him and the victim was that he had examined her private parts for bruises to determine whether someone else had abused her. Also, after he had been arrested, the defendant told a female acquaintance that while the victim was sleeping, he had lifted the victim's sleeping garments to check her for a rash.[3]

---

[3] The female acquaintance testified for the state on rebuttal examination. Previously, on cross-examination by the state, the defendant had denied talking to the female acquaintance about the victim's allegations.

In addition, the jury heard testimony that the defendant kept adult magazines to which the victim had access and that he had entered his mother's place of employment after hours and used a computer to gain access to pornographic material. See footnote 10.

Following the jury's verdict, the court sentenced the defendant to twelve years in the custody of the commissioner of correction, suspended after five and one-half years. Additional facts will be discussed where necessary.

I

The defendant has raised three evidentiary claims on appeal. He claims that the court improperly (1) admitted evidence of 1992 uncharged misconduct pursuant to § 4-5 (b) of the Connecticut Code of Evidence,[4] (2) admitted hearsay evidence about the 1992 uncharged misconduct and (3) restricted the scope of his cross-examination of the victim. We disagree.

The standard of review that applies to the defendant's evidentiary claims is well established. "The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and under-

---

[4] "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Conn. Code. Evid. § 4-5 (b).

standing of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State v. Ciccio*, 77 Conn. App. 368, 382, 823 A.2d 1233 (2003).

A

The following additional facts are necessary for our review of the defendant's claims that the court improperly admitted evidence of and hearsay evidence related to the 1992 uncharged misconduct. Immediately prior to trial, the defendant filed a motion asking the court to order the state to disclose criminal offenses or acts of misconduct that it would seek to place in evidence at trial. The defendant simultaneously filed a motion in limine, asking the court to exclude from evidence any of his crimes, acts, misconduct or wrongdoing other than the crimes with which he was charged in this case. In response, the state filed notice that it intended to offer evidence of uncharged 1992 sexual misconduct concerning the defendant and the victim. The court heard arguments with regard to the motions and notice prior to the presentation of evidence in the case.

At the hearing on the motion to present evidence of uncharged misconduct, the state represented that the victim's pediatrician, Jeffrey Cersonsky, would testify about the victim's disclosure involving the defendant. The state proffered that Cersonsky would testify that the victim's mother had brought her to Cersonsky for examination because the child spontaneously had said that her "daddy liked it when she touched his pee-pee," and, "I'm not gonna tell you, but I played with daddy's pee-pee." The victim's mother relayed that information to Cersonsky, as well as her opinion that she did not believe that the defendant would engage in that type of conduct. On the basis of a report from the victim's

mother, Cersonsky informed the then department of children and youth services (department),[5] which conducted an investigation of the victim's disclosure. The victim, who was then two and one-half years of age, would not tell Cersonsky about the incident and was not interviewed by the department.

The state argued that evidence of the 1992 incident should be admitted as prior uncharged misconduct because it was evidence of a common scheme on the defendant's part to sexually abuse his daughter. The state noted that the alleged incident in 1992 had occurred in the same place where the incidents alleged in the present case had occurred—the home of the defendant's parents—the defendant's conduct was similar in nature, the victim was the same and the occurrence of the prior incident was not too remote in time relative to the present charges. The state cited *State* v. *Kulmac*, 230 Conn. 43, 60, 644 A.2d 887 (1994), and *State* v. *Morowitz*, 200 Conn. 440, 446, 512 A.2d 175 (1986), in support of its argument.

The defendant countered that the two events were not similar enough to warrant the admission of the 1992 misconduct evidence. The defendant did not deny that in 1992, the victim touched his penis, but claimed that he was sleeping nude when the victim, who was not yet three years old, crawled over and grabbed his penis. According to the defendant, the 1992 touching was accidental. He also argued that the incidents were distinguishable because the 1992 incident, which he acknowledged, involved the victim's touching him and the present charges, which he denied, involve his touching the victim.

The court inquired of the defendant whether his claim was one of prejudice or whether he was denying that the 1992 incident occurred. The court explained that

---

[5] The department is now known as the department of children and families.

uncharged misconduct does not necessarily mean that the defendant, in fact, did what is claimed as uncharged misconduct, but that there is just an allegation of that misconduct. The defendant replied that there was no misconduct because the 1992 touching was accidental. The court responded that it did not know whether there was misconduct and that the state had the burden of substantiating that the incident in fact occurred. The court also indicated that if the evidence of the 1992 event were permitted, the court would give a limiting instruction that the defendant was not being tried on the uncharged misconduct, but that the evidence had been admitted to prove a common scheme.

The court noted that under *Kulmac*, the standard for the admission of prior misconduct is more liberal to show a common scheme or pattern in sex related crimes than in other crimes. *State* v. *Kulmac*, supra, 230 Conn. 62. The court reserved its judgment on the state's motion until it had heard the evidence related to the 1992 uncharged misconduct to determine whether it fit the *Kulmac* criteria.

The defendant, however, filed a motion for reconsideration of the motion in limine, adding that evidence of the 1992 uncharged misconduct should not be admitted into evidence because it consisted of hearsay and double hearsay, and that where there are multiple layers of hearsay, each layer must be admissible independently. See Conn. Code Evid. § 8-7. The defendant claimed that the hearsay statements at issue did not have the usual guarantees of reliability necessary to be admitted pursuant to the exceptions to the rule.

The state's response to the defendant's argument was that the evidence was admissible under the medical exception to the hearsay rule[6] because the victim's

---

[6] "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . .

"(5) Statement for purposes of obtaining medical treatment or advice pertaining thereto. A statement made for purposes of obtaining medical

mother took the child to her pediatrician on the basis of the child's having told her that "daddy likes it when I touch his pee-pee." The state relied on this court's holding in *State* v. *Maldonado*, 13 Conn. App. 368, 374 & n.13, 536 A.2d 600 (Spanish-speaking security guard at hospital permitted to interpret for child victim of sexual assault), cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). The state also claimed that the statement was admissible under the residual exception to the hearsay rule[7] pursuant to *State* v. *Dollinger*, 20 Conn. App. 530, 539–42, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). The residual exception to the hearsay rule is "particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose." Id., 540.

The court subsequently ruled that the victim's mother could testify about the statements the child had made to her concerning the 1992 uncharged misconduct. The court found that there was no question that the incident had occurred and that whether the touching was accidental or inappropriate was for the jury to determine. The court also found that victim had no memory of the incident and was incompetent to testify about it.[8] The court also noted that the victim's mother was sufficiently concerned about the victim's statement to take her to a physician. In ruling, the court cited *Dollinger*, *Maldonado* and §§ 8.3 (5) and 8.7 of the Connecticut

treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." Conn. Code Evid. § 8-3.

[7] "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9.

[8] The parties stipulated that the victim had no recollection of the 1992 incident.

Code of Evidence. Finally, the court granted the state's motion in limine, precluding the defendant from disclosing the results of the department's investigation. But see footnote 9.

Over the defendant's continuing objection to the admission of evidence having to do with his 1992 uncharged misconduct, the court permitted the victim's mother to testify about the incident. The jury heard that in 1992, the victim was approximately two and one-half years old. The victim's mother was carrying the child on her hip when the victim groped her breast. Her mother stopped the victim and told her that the groping was inappropriate behavior. The victim responded, "I'm not going to tell you that I touch daddy's pee-pee." The victim's mother later confronted the defendant about the victim's statement. The defendant informed her that he had been lying down wearing a pair of shorts when the victim crawled over and grabbed his penis. The defendant explained that he was upset about the behavior and told the victim not to do it again. Shortly thereafter, the victim's mother took her to see Cersonsky to determine whether the victim had been abused sexually. The court interrupted the testimony of the victim's mother to instruct the jury that the testimony was being admitted for the limited purpose of a common scheme or pattern of activity and that it was not to be used as a basis to convict the defendant on the current charges.[9]

---

[9] The court provided the following limiting instruction in relevant part: "Ladies and gentlemen, during the presentation of the evidence so far, you've heard testimony from this witness regarding allegations of acts which took place, if at all, involving the defendant and [the victim], which occurred in 1992. And they are outside the time limits stated in this information.

"If you'll recall, this information refers to acts that were alleged to have occurred between March, 1999, and May 1, 1999. Remember that the charges that you are to decide only relate to the allegations contained in that information, the time period of March, 1999 to May 1 of 1999.

"In order to find the defendant guilty, you must find that the acts alleged in the information occurred within that time frame set forth in that information, the one that I read to you. You may not convict the defendant based on the acts, if you believe them, which this witness has testified, which

At the conclusion of the testimony of the victim's mother, the state called Cersonsky as a witness. He testified, on the basis of his office notes, that the victim's mother had relayed to him various statements the victim spontaneously had made at different periods of time prior to the examination, specifically, "I played with daddy's pee-pee," "I'm not going to tell you I played with daddy's pee-pee because he told me not to," and, "he likes when I do it." Again, the court instructed the jury that the testimony was being admitted for the limited purpose of a common scheme or pattern of activity and that it was not to be used as a basis to convict the defendant on the current charges. According to Cersonsky, his examination of the victim revealed no evidence of sexual abuse, but also that it was not conclusive that the child had not been sexually abused. As a person mandated by General Statutes § 17a-101 to report suspected cases of child abuse, Cersonsky reported the incident to the department.[10]

took place in 1992. Evidence of those other uncharged act or acts involving, allegedly, between the defendant and the victim, occurred outside of the time frame and were only offered to show a common scheme or pattern of criminal activity.

"The defendant is not charged with any crimes or misconduct related to those incidents in 1992. The testimony is not offered and cannot be used to show that the defendant had a propensity to commit a crime or that because he may have committed some similar misconduct in the past, he must have committed the charged misconduct with the victim in 1992.

"You are to weigh the testimony and assess the credibility of this witness, like you would any other witness, even if you accept all of this testimony, you must not use that testimony as evidence of the defendant's criminal disposition. If you find the evidence credible . . . and similar to the charged crimes, which are contained in the information, and that the alleged pattern of behavior, or that there is an alleged pattern of behavior, then you may only use this testimony as evidence of a pattern or course of criminal conduct by the defendant. And you're not required to reach this conclusion."

[10] The defendant has argued that because the court permitted the state to present evidence of the 1992 incident, he was required to testify. The defendant testified, in part, that in 1992, he slept naked in the same bed with the victim. He was awakened one morning when the victim took his penis in her hand. He was surprised by the victim's behavior and told her not to do it again. When he was interviewed by the department investigator,

On appeal, the defendant claims that the court improperly permitted the state to place into evidence facts concerning the 1992 uncharged misconduct because (1) there was insufficient evidence that he had engaged in wrongful conduct, (2) the court failed to balance the probative value of the incident with its prejudicial effect, and (3) the testimony of the victim's mother and Cersonsky was inadmissible hearsay.

"The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 393, 796 A.2d 1191 (2002).

This court recently discussed the admissibility of uncharged misconduct evidence in sexual assault cases involving a child in *State* v. *Gibson*, 75 Conn. App. 103, 815 A.2d 172, cert. granted on other grounds, 263 Conn. 906, 819 A.2d 840 (2003). "It is well settled that evidence

the defendant told the investigator that the victim slept in her own bed. Despite the court's ruling that the defendant was not to reveal the conclusion of the department's investigation, the defendant testified that the department closed its file without taking any action.

On rebuttal, the state called the department investigator, Dennis McNernon, who testified that as part of his investigation in 1992, he interviewed the defendant in the home of the defendant's parents and observed the sleeping arrangements. The defendant stated that he and the victim slept in separate beds, according to McNernon's testimony. McNernon testified that had he known that the defendant was sleeping in the same bed with the victim, he would not have closed the file and would have recommended that the defendant seek counseling about the practice.

of prior misconduct is admissible for the purpose of showing knowledge, intent, motive, and common scheme or design, but is not admissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Uncharged misconduct evidence relates to a collateral, uncharged crime and does not prove the commission of the principal crime with which the defendant is charged." (Citation omitted.) Id., 109–10.

"To admit evidence of prior misconduct properly, two tests must be met. The evidence (1) must be material and relevant, and (2) its probative value must outweigh the prejudicial effect of the evidence. . . . Evidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue. . . . Relevant evidence is defined in the Connecticut Code of Evidence, § 4-1, as evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. The commentary to that section makes it clear that there are two separate components of relevant evidence at common law, probative value and materiality. Evidence is relevant if it tends to support the conclusion even to a slight degree. . . . Materiality is determined by the pleadings (or information) and the applicable substantive law." (Citations omitted; internal quotation marks omitted.) Id., 110.

"Evidence of prior sexual misconduct is admissible to show a common scheme or design where the prior acts are not too remote in time, are similar to the offense charged and are committed involving persons similar to the victim. . . . Moreover, courts are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than in other crimes." (Citations omitted; internal quotation marks omitted.) Id., 110–11.

On appeal, the defendant claims that the court abdicated its role as gatekeeper with respect to the admission of the 1992 uncharged misconduct evidence. He claims that the court should have determined whether there was sufficient evidence that the incident was wrongful rather than an innocent touching. In support of his argument, the defendant cites *State* v. *Wilson*, 199 Conn. 417, 449, 513 A.2d 620 (1986). In *Wilson*, the defendant successfully appealed from his manslaughter conviction concerning the death of one of his girlfriend's children due to child abuse. In that case, the state presented voluminous evidence that the victim and her sister had had many prior injuries indicative of child abuse. The *Wilson* defendant objected to the admission of the evidence, as there was no evidence that he was responsible for the children's injuries. Id., 448. In reversing the judgment of conviction, our Supreme Court stated that "[u]nless circumstances indicate otherwise, evidence that the defendant has intentionally abused the child victim in the past is probative on the issue of his intent to cause injury with respect to the crime charged. However, before such evidence can have *any* probative value, there must be a preliminary showing sufficient to support a jury finding that the defendant, in fact, caused the prior injury." (Emphasis in original.) Id., 449.

The factual circumstances of the case before us are distinguishable from *Wilson*, in which there was no evidence that the defendant had been involved in the prior incidents of child abuse. Here, there is no dispute that the victim touched the defendant's penis in 1992. The issue was whether it was accidental or wrongful, which the court stated was for the jury to determine. We agree with the court.

"Evidence of a criminal defendant's prior crimes or misconduct is offered, not to show that the defendant has a criminal record, but to establish that, because the

prior conduct shares certain distinctive features with the charged conduct, it is reasonable to infer that the defendant committed the charged act in a similar manner. . . . To be relevant for this purpose, it is not necessary for the prior offense to have resulted either in an arrest or in a conviction. . . . Such evidence may be admissible even when a prosecution for the earlier offense has resulted in an acquittal." (Citations omitted.) *State* v. *Morowitz*, supra, 200 Conn. 448–49.

On the basis of our review of the hearing on the uncharged misconduct and the offer of proof, we agree with the court that the evidence of the defendant's 1992 uncharged misconduct was material and relevant to the crimes with which the defendant was charged. First of all, there is no doubt that the 1992 touching occurred, as the defendant admitted that it had happened. Second, there are notable similarities between the events occurring in the 1992 incident and the charges at issue here. In both situations, either the defendant or the victim touched the other's sexual organs while the victim was visiting the defendant in his parents' home when either the defendant or the victim was in a relative state of undress or asleep. Although the incidents were separated by a span of seven years, that period of time is acceptable to our Supreme Court for the admission of prior uncharged misconduct. See id., 446. We also observe that the defendant left Connecticut shortly after the 1992 incident occurred and that the charges here arose less than one year after he had returned to the state.

In light of those factors, we conclude that the circumstances surrounding the prior uncharged misconduct were sufficiently similar to the offenses charged here to be probative, that is, the misconduct evidence was material and relevant to show a common scheme. See *State* v. *Gibson*, supra, 75 Conn. App. 111.

The defendant also claims that the court improperly admitted the 1992 misconduct evidence because it failed to balance the probative versus prejudicial nature of the evidence. The state agrees that on the record, the court did not explicitly balance the evidence. The state argues, however, that the court's balancing of the evidence can be inferred from its conduct.[11] See *State v. Nunes*, 260 Conn. 649, 689–90, 800 A.2d 1160 (2002) (failure to perform prejudicial-probative balancing test on record does not constitute error where reviewing court can "infer from the entire record that the trial

[11] The state has drawn to our attention the following exchange between the court and defense counsel:

"The Court: Well, the irony with all of this, [defense counsel], is that your argument would have more validity and be more persuasive to the court if the parties didn't report such an incident. If it was just coming from one side. But ironically enough, one of the documents that I gave you, the father verifies that the incident occurred. . . .

"[Defense Counsel]: Not this incident.

"The Court: Wait a second, sir. His slant on it is different, but he admits that the child touched his pee-pee. So, it's not like this incident didn't occur. It's just a question of how it occurred.

"[Defense Counsel]: And the inflammatory and prejudicial nature of the way—what this language is that the person didn't testify to, number one. And, number two, Your Honor, it's not our job to explain things away. That's shifting with the burden.

"The Court: No. It's not a question of explaining. I'm balancing what happened here. I have two versions of what happened here. I have the mother's version recited to the doctor, which says that the child touched the father's private parts. And the second statement is that he liked it and told her not to tell anybody. The defendant himself, at the time of this incident, spoke to a representative of the [department] and said, 'Yes, it happened. It didn't happened the way the child said it happened, but she did, in fact, touch my private.'

"So, sir, there's no real fabrication here of an incident. There's only a question of which version is more believable. And that's for the jury to decide, not for me. If there was no report at all from [the department], or if there was a total denial of it, then, you might have a stronger argument. But I have, not only from the mother and the doctor, but I have a statement that you asked me to peruse in camera, and I gave you, which says the father reported that incident. Now, you want to push it under the rug and say it didn't happen. It did happen. Because all of the parties agreed that it happened. The only thing they disagreed upon was the version. All right. I'm going to rule it in."

court considered the prejudicial effect of the evidence against its probative nature before making a ruling"). We agree with the state.

In *Gibson*, the court acknowledged that it is more difficult to determine whether the admission of prior uncharged misconduct was an abuse of discretion when balancing the probative value with the prejudicial effect than to determine whether it was relevant and material. *State* v. *Gibson*, supra, 75 Conn. App. 111. "Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence . . . but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The problem is thus one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence. . . .

"In sexual assault cases, because of the nature of the evidence and its potential impact on the jury, the use of prior sexual misconduct evidence is usually prejudicial to the defendant, as well as probative of whether the defendant committed the charged crime. The balancing of probity against prejudice, therefore, to determine which trumps the other, in crimes involving sexual assaults and prior sexual misconduct, is a difficult process." (Citations omitted; internal quotation marks omitted.) Id., 111–12.

Because of the factual similarities between the crimes alleged here and the crimes alleged in *Gibson*, where the defendant was an adult known to the young female victims, the careful analysis used in that case aptly

applies to the situation before us. "[T]he probative value of the evidence is increased, and the prejudicial effect decreased, by a number of factors. First, as in most other sexual assault cases, because they usually occur in private, the balance of the case hinged on the [victim's] testimony versus the defendant's testimony. Thus, the evidence of prior misconduct was important to the state's case to bolster the [victim's] credibility. . . .

"Additionally, the striking similarities . . . of the prior offenses to the charged offenses made them highly probative. . . . Further, both the charged and uncharged offenses were sexual crimes. Therefore, because the jury already had heard, and was in the process of hearing, evidence of the charged sexual offenses, the uncharged sexual misconduct evidence was not as shocking and the prejudicial impact lessened. . . .

"Last, we are mindful that we are to give every reasonable presumption to the validity of the 'call' by the trial court and that we accord more liberality in the admission of such evidence in cases involving sex related crimes than in cases involving other crimes." (Citations omitted.) Id., 112–13.

In addition, as the state has pointed out, the court was aware of the prejudicial nature of the misconduct evidence and twice gave the jury a limiting instruction with regard to its use. See *State* v. *Figueroa*, 235 Conn. 145, 167, 665 A.2d 63 (1995).

For those reasons, particularly the need to determine who was telling the truth with respect to the charges at issue and the highly deferential standard we afford the decision of the court; see *State* v. *Sierra*, 213 Conn. 422, 436, 568 A.2d 448 (1990); we conclude that the court did not abuse its discretion by admitting the evidence of 1992 prior misconduct.

## B

The defendant's second evidentiary claim is that the court improperly admitted the hearsay testimony of (1) the victim's mother regarding (a) the victim's statement to her, i.e., "I'm not going to tell you I touch daddy's pee-pee," and (b) the statements the victim's mother made to Cersonsky, and (2) Cersonsky regarding the mother's statements to him. We disagree.

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). "Hearsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book." Id., § 8-2. "Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." Id., § 8-7.

At trial, the court permitted the victim's mother and Cersonsky to testify about the victim's statements regarding the defendant's 1992 uncharged misconduct pursuant to the medical treatment exception to the hearsay rule. Section 8-3 of our code of evidence provides in relevant part that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice."

We conclude that the court properly admitted the hearsay testimony of the victim's mother to Cersonsky and Cersonsky's hearsay testimony regarding the representations of the mother pursuant to the medical treatment exception. Although we conclude that the hearsay

statements of the victim's mother regarding the child's statements to her were not admissible pursuant to the medical treatment exception to the hearsay rule, the error was harmless, as the testimony was admissible under the residual exception to the hearsay rule. We have long held that this court may affirm a trial court's proper decision, although it may have been founded on a wrong reason. See *State* v. *Lucas*, 63 Conn. App. 263, 270 n.7, 775 A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001); see also *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 869, 797 A.2d 1146 (if residual exception was properly applied to statements, then court's improper admission of them under medical treatment exception was harmless), cert. denied, 261 Conn. 906, 804 A.2d 212 (2002).

"The hearsay rule . . . is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

"Nonetheless, the . . . [r]ules of [e]vidence also recognize that some kinds of out-of-court statements are less subject to these hearsay dangers, and therefore except them from the general rule that hearsay is inadmissible. . . . One such category covers statements made by a patient to a physician for the purpose of obtaining medical treatment. . . .

"The rationale underlying the medical treatment exception to the hearsay rule is that the patient's desire

to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." (Citations omitted; internal quotation marks omitted.) *State* v. *Cruz*, 260 Conn. 1, 6–7, 792 A.2d 823 (2002). "Section 8-3 (5) does not, by its terms, restrict statements admissible under the exception to those made by the patient. For example, if a parent were to bring his or her unconscious child into an emergency room, statements made by the parent to a health care provider for the purpose of obtaining treatment and pertinent to that treatment fall within the scope of the exception." Conn. Code Evid. § 8-3 (5) commentary.

"[T]estimony pertaining to the identity of the defendant and the nature of the sexual assault [are] wholly relevant and pertinent to proper diagnosis and treatment of the resulting physical and psychological injuries of sexual assault. . . . [Our Supreme Court] concluded that [i]n any sexual assault, the identity of the perpetrator undoubtedly is relevant to the physician to facilitate the treatment of psychological and physical injuries." (Citations omitted; internal quotation marks omitted.) *State* v. *Cruz*, supra, 260 Conn. 15.

We first consider the defendant's claim that the hearsay testimony of the victim's mother with respect to what she reported to the child's pediatrician, Cersonsky, was inadmissible. The victim's mother took her to Cersonsky out of concern that the victim may have been assaulted sexually because of statements the child had made to her about touching the defendant's penis. The two and one-half year old child would not communicate with the physician. Consequently, it was necessary for the victim's mother to explain to the physician why she had brought her daughter to see him. Because the victim's mother was seeking medical advice, and possibly treatment for the victim, she had every reason to be forthright with Cersonsky. As Cersonsky made

known in his testimony, the child's statements were relevant, as they directed his examination of her and contributed to his decision to inform the authorities. The statements were also relevant to any treatment or advice he may have given the victim.

Our Supreme Court has sanctioned the admission of hearsay testimony regarding statements and nonverbal communication made by a child who does not speak English to an adult who acts as an interpreter in a hospital setting. See *State* v. *Maldonado*, supra, 13 Conn. App. 370–74. Furthermore, "[i]f the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries." (Internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994). Because the victim's alleged abuser was her father, the defendant, with whom she visited on weekends, and because her mother had taken her to Cersonsky to determine whether she had been abused, the evidence was admitted properly pursuant to the medical exception to the hearsay rule.

With respect to the defendant's argument that the admission of the mother's statements to Cersonsky was harmful because the pediatrician found no evidence of abuse, courts have held that the absence of abuse is not relevant to determine the reliability of hearsay statements, particularly when there has been a lapse of time between the abuse and the report. *Doe* v. *Thames Valley Council for Community Action, Inc.*, supra, 69 Conn. App. 860 n.11, 863.

As to Cersonsky's medical records from which the pediatrician read,[12] the defendant concedes that they were admissible as a business record pursuant to Gen-

---

[12] Cersonsky's records themselves were not admitted into evidence.

eral Statutes § 52-180. The defendant claims that the victim's statements to her mother, however, were not admissible hearsay because they themselves were not made for the purpose of seeking medical treatment or advice. We agree that the victim's statements were not made for the purpose of seeking medical treatment or advice, but they were, nonetheless, admissible under the residual exception to the hearsay rule.

"A statement that is not admissible under any of the forgoing exceptions [to the hearsay rule] is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9. "The necessity prong is met when the facts in the statement will be lost unless admitted as hearsay, either because the declarant is unavailable or because there is no equally probative alternative source. . . . The statement must also contain information necessary to the resolution of the case." (Citations omitted.) *State* v. *Dollinger*, supra, 20 Conn. App. 539.

"A basic rule is that [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies. . . . The residual exception is one of these exceptions, but it is one that should be used very rarely and only in exceptional circumstances. . . . The residual exception has, however, been held to be particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Thames Valley Counsel for Community Action, Inc.*, supra, 69 Conn. App. 854.

The residual exception to the hearsay rule "considers several factors to be weighed for determining admissibility of out-of-court statements by child victims of abuse. These factors include the age of the child, the nature of the assault, the presence of physical evidence of that assault, the relationship of the child to the defendant, the spontaneity of the statement, the reliability of the statements themselves and the reliability of the testifying witness." *State* v. *Dollinger*, supra, 20 Conn. App. 541. "[C]ommon sense suggests that [s]ome of the most powerful potential evidence . . . lies in the child's prior out-of-court statements. When a child first reveals that there has been sexual abuse, the content and manner of the revelation is often striking in its clarity and ring of truth." (Internal quotation marks omitted.) Id. As in *Dollinger*, here, "[t]he simplicity, innocence and unselfconsciousness of [the two year old victim's] behavior and identification of the defendant belie calculation or fabrication and carry just this ring of truth." Id., 542.

The primary issue for the jury to determine in this case was credibility, as it heard a significant amount of evidence regarding the credibility of both the defendant and the then twelve year old victim. The state sought to admit the 1992 uncharged misconduct evidence to demonstrate a pattern or scheme of conduct on the part of the defendant. The victim, however, had no recollection of her statements or the event, which occurred approximately ten years before. The hearsay testimony was therefore necessary.

The victim's statement, "I'm not going to tell you that I touch daddy's pee-pee," also bore the hallmarks of reliability. The victim uttered it spontaneously when her mother instructed her that groping her breast was inappropriate behavior. As to the victim's statement that "daddy likes it when I touch his pee-pee," Cersonsky testified that it is not developmentally appropriate

for a two year old child to know that a man derives pleasure from having his penis touched. The victim used terminology to describe her father's penis that is child appropriate.

Furthermore, with respect to the 1992 uncharged misconduct evidence, the testimony of both the victim's mother and Cersonsky appears to be reliable. When she reported the victim's statements to Cersonsky in 1992, the victim's mother stated that she did not believe that the defendant would do what the victim had indicated. As the victim's physician, Cersonsky had a duty to act relative to the child's health and best interests. And finally, the defendant had ample opportunity to cross-examine both the victim's mother and Cersonsky as to motive and bias. The jury was aware of the conflict between the defendant and the victim's mother with respect to child support, visitation and the manner in which, and by whom, the victim was to be disciplined.

For all of the foregoing reasons, we conclude that the court did not abuse its discretion when it admitted hearsay evidence of the defendant's 1992 uncharged misconduct.

II

The defendant's last evidentiary claim is that the court impermissibly limited his cross-examination of the victim with respect to specific acts of conduct that were probative of her character for truthfulness. We do not agree that the court abused its discretion, as the defendant claims.

At trial, the state filed a motion in limine to preclude the defense from cross-examining the victim about a letter she wrote to a pen pal as part of a school assignment in which she claimed to have been attacked by a stray cat. As a result of the attack, the victim wrote that she had to receive seventeen sutures to close the

wound. The state also wanted the court to preclude the defendant from cross-examining the victim about an entry she made in her diary or journal. In her diary, the victim wrote that her mother had informed her that she and her husband were planning to have a baby. The victim was not happy to hear that information and wrote that her mother had hit her and kicked her when she told her mother not to have another child. Although the defendant never established that the victim had not been attacked or received stitches, he argued that those prior misstatements or conduct were relevant to her character for truthfulness. The court refused to let the defendant use the pen pal letter to cross-examine the victim because it was a collateral issue. The court reserved judgment with regard to the statement in the victim's diary until the victim had testified.

The victim testified that when she got into trouble with her mother, she would be grounded or sent to her room, and if she really got into trouble, her mother would slap her face. On cross-examination, the victim responded, "no," when asked whether her mother had ever kicked her or punched her in the stomach.

Outside the presence of the jury, the defendant told the court that he wanted to question the victim about whether she had written in her diary that her mother had kicked her. The defendant acknowledged that the only issue in dispute was whether the victim's mother had kicked her, but argued that because the victim testified that her mother did not kick her, the journal entry was a lie. The court noted that the issue involved a collateral matter and that there was no evidence that the event had occurred.

After hearing the arguments of counsel, the court ruled: "I've heard enough on it. And I'm not going to allow that in. I think it's a collateral issue. I think it opens up grounds that are not relevant to this case.

There's nothing in here to indicate that this child has ever made a complaint in this diary or anyplace else of sexual abuse by this father or by anyone else that was of an untruthful nature. The fact that there's some inconsistency, only two words, 'kick me,' I do not see that it has any relevance or bearing, and I think it would confuse the jury. I'm going to rule that out. . . . [T]his does not go to the heart of truthfulness. Now, if you have some specific evidence on this, perhaps, you may be able to bring it out. But right now, based on what the child has testified, I not going to let it in."

The court later clarified its ruling for the defendant when he considered recalling the victim as a witness. The court told the defendant that its ruling pertained to three documents, of which only the diary and pen pal letter are relevant here, and that it never limited his cross-examination of the victim as to her telling lies. The court indicated that it would permit the defendant to recall the witness to examine her about lying.[13]

The victim's mother testified on cross-examination that the victim was not always truthful and had once stolen something. The defendant presented evidence that the victim did not always obey her parents and grandparents and sometimes had temper tantrums. According to the victim's paternal grandparents, uncle and an older female paternal cousin, the victim was not always truthful and fabricated stories. Her relatives, however, agreed that the victim had never accused anyone other than the defendant of sexually abusing her.

On appeal, the defendant relies on § 6-6 (b) of the our code of evidence, which provides: "(1) General rule. A witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness. (2) Extrinsic evidence. Specific instances of the conduct of a witness,

---

[13] The defendant did not recall the victim to testify.

for the purpose of impeaching the witness' credibility under subdivision (1), may not be proved by extrinsic evidence." Conn. Code Evid. § 6-6 (b).

The confrontation clause of the United States constitution "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense." (Internal quotation marks omitted.) *State* v. *Melendez*, 74 Conn. App. 215, 230–31, 811 A.2d 261 (2002), cert. denied, 262 Conn. 951, 817 A.2d 111 (2003).

With respect to the court's precluding the defendant from examining the victim about the pen pal letter, our review of the hearing on the state's motion in limine reveals that the letter was written as a school assignment. The court noted that it was unaware of the circumstances under which the assignment was completed, whether the victim was relating a truthful act or whether the teacher had encouraged the students to use their imaginations. The court also noted that the defendant could not use the document to impeach the victim before there was evidence that she had been untruthful; in other words, the defendant had failed to lay the proper foundation. Under the circumstances, we conclude that the court did not abuse its discretion in denying the defendant the opportunity to cross-examine the victim on the collateral issues contained in the pen pal letter.

We also conclude that the court did not abuse its discretion with respect to the journal or diary entry, given the circumstances under which it appears to have been written. The victim confided in her diary that she

was angry when her mother told her that she and her husband were planning to have a baby. Furthermore, there was no evidence that the victim had lied. On cross-examination, the defendant asked her if her mother had ever kicked her in the stomach, and the victim said, "no." In the journal, the victim wrote that her mother punched and kicked her. There is no inconsistency between the victim's testimony and the journal. The victim testified that her mother sometimes slapped her on the face, which also is not inconsistent with the journal. The victim's mother denied kicking the victim, but admitted slapping her on the face. The defendant accuses the victim of being untruthful, when it may well have been the victim's mother who was untruthful. In the end, however, the issue is collateral as to whether the victim had accused the defendant or anyone else of sexual abuse falsely.

"A trial court is vested with broad discretion to determine . . . the relevancy . . . of evidence. . . . Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters." (Internal quotation marks omitted.) *State* v. *Menzies*, 26 Conn. App. 674, 685–86, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992). Here, we conclude that the court did not abuse its discretion when it precluded the defendant from cross-examining the victim about two documents that pertained to collateral matters. Furthermore, the defendant was given the opportunity to question the victim as to whether she told lies and did not do so. The defendant had the opportunity during his case to present evidence from the victim's mother and the defendant's family that the victim was known not to tell the whole truth, to exaggerate and to fabricate stories.

For all of the foregoing reasons, we cannot conclude that the court's evidentiary rulings demonstrate an abuse of its discretion.

## III

The defendant also claims that the court's admission of improper hearsay and its restriction on his right to cross-examine the victim violated his state and federal constitutional rights to confrontation. See part I A and B. We disagree.

In his brief, the defendant has cited general propositions of law demonstrating that he, a criminal defendant, is entitled to confront witnesses against him.[14] Although the defendant has cited the law correctly, he has failed to explain by means of legal analysis how the court's evidentiary rulings in totality deprived him of a constitutional right. It is not the policy of this court to review claims that have not been briefed adequately. "In order for this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Citation omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 100, 709 A.2d 14 (1998).

Furthermore, as the state points out, the defendant's claim must fail because we have concluded that the court's evidentiary rulings were not improper. On more than one occasion, our Supreme Court has addressed similar claims that the cumulative effect of the improprieties alleged warrant reversal of a conviction. See *State* v. *Robinson*, 227 Conn. 711, 746–47, 631 A.2d 288 (1993). "The defendant in *State* v. *Tillman*, 220 Conn. 487, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992), made a similar claim. He argued that a group of instructional claims of error,

---

[14] In his brief to this court, the defendant makes clear that he is not claiming that the constitution of Connecticut confers greater rights than those secured by the United States constitution. He also did not address the state constitutional issue separately. We therefore have confined our review to the confrontation rights secured by the federal constitution.

none of which individually constituted error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial. . . . We rejected the defendant's claim in *Tillman*, and we reject the defendant's analogous claim in this case. We decline to create a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Citation omitted; internal quotation marks omitted.) *State* v. *Robinson*, supra, 747; see also *State* v. *Cassidy*, 236 Conn. 112, 146, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds, *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

The judgment is affirmed.

In this opinion the other judges concurred.