## STATE OF CONNECTICUT *v.* AARON L.
## (SC 17089)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.[1]

[1] This case originally was argued on September 23, 2004, before a panel of this court consisting of Chief Justice Sullivan and Justices Norcott, Katz, Palmer and Zarella. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Justices Borden and Vertefeuille were added to the panel, and they have read the record and the briefs and have listened to the tape recording of the original argument.

Argued September 23, 2004—officially released February 15, 2005

*David T. Grudberg*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Kevin Doyle*, assistant state's attorney, for the appellee (state).

KATZ, J. The defendant, Aaron L.,[2] appealed to the Appellate Court from the trial court's judgment of conviction, following a jury trial, on one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[3] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[4] Following the decision of that court affirming the judgment of conviction; *State* v. *Aaron L.*, 79 Conn. App. 397, 803 A.2d 776 (2003); we granted the defendant's petition for certification to appeal limited to the following issues: Did the Appellate Court properly conclude that: (1) the statement of the victim to her mother was admissible under the residual exception to the hearsay rule; and (2) there was sufficient evidence to allow the admission of a 1992 incident as uncharged misconduct?[5] *State* v. *Aaron L.*, 266 Conn. 924, 835 A.2d 474 (2003). We answer the certified questions in the affirmative and, therefore, we affirm the judgment of the Appellate Court.

[2] In accordance with General Statutes § 54-86e and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[4] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[5] We have reordered the certified question in our analysis to address the defendant's hearsay claim first because the admissibility of the hearsay evidence is a predicate to the defendant's sufficiency of the evidence claim. The admissibility of all the evidence of the 1992 incident hinges on the admissibility of the victim's statement.

The jury reasonably could have found the following facts as summarized by the Appellate Court's opinion. "The victim was born in 1989, the only child of her mother and the defendant, who never married. The victim's parents continued their relationship for about one year after the victim was born. Since the time that her parents separated, the victim has lived with her mother, but maintained a relationship with the defendant and his family by visiting with them, most often in the home of the defendant's parents. The defendant saw the victim on a weekly basis when he resided in Connecticut, but less frequently between 1992 and 1998, when he resided outside the state. At times, the relationship between the defendant and the victim's mother was contentious due to issues of child support, visitation and the manner in which the victim was to be disciplined.

"[In late summer of 1998], the defendant, having returned to Connecticut, visited with the victim on weekends at his parents' home, where he and the victim slept in the same bed. [In] April, 1999, [when the victim was nine years old] the defendant entered the bedroom after the victim had retired, got into bed and removed the victim's pajama bottom and underwear. He then used his finger to poke the victim's stomach, legs, inner thigh and the top of her vagina. He also inserted his finger into her vagina. [One] Friday in May, 1999, the victim told her mother that she did not want to visit with the defendant that weekend and confided that the defendant had sexually abused her.[6] The victim's mother confronted the defendant and reported the incident to the police. The defendant subsequently was

---

[6] At trial, two defense witnesses testified that, following his arrest, the defendant had explained to them that he had examined the victim for evidence of sexual abuse because he suspected that someone else had been abusing her. Another witness testified that the defendant had told her, also after he had been arrested, that he had lifted the victim's sleeping garments, while she was sleeping, to check her for a rash.

arrested and charged with [two counts] of sexual assault [in the first degree] and [three counts of] risk of injury to a child." *State* v. *Aaron L.*, supra, 79 Conn. App. 399–400.

The record reflects the following additional facts and procedural history pertinent to the issues before us. Prior to trial, the defendant filed two motions: one sought an order for the state to disclose all criminal offenses or acts of misconduct that it would seek to introduce at trial, and the other sought to exclude all evidence of any prior crimes, acts, misconduct, or wrongdoings. The state filed notice that it intended to offer evidence of uncharged sexual misconduct concerning the defendant and the victim that had allegedly occurred in 1992 (1992 incident).

At the hearing on the defendant's motion in limine to exclude that evidence, the state represented that it would introduce testimony by the victim's mother and the victim's pediatrician, Jeffrey Cersonsky, regarding the 1992 incident, which occurred when the victim was two and one-half years old and which she could no longer recall. The state indicated that Cersonsky would testify that the victim's mother had brought the victim to be examined by him because the child spontaneously had said to her, "I'm not going to tell you, but I played with daddy's pee-pee. He likes it when I do it." On the basis of the mother's report, Cersonsky filed a report with the department of children and youth services (department)[7] setting forth the victim's disclosure. The state argued that evidence of the 1992 incident should be admitted as prior uncharged misconduct pursuant to § 4-5 (b) of the Connecticut Code of Evidence[8]

---

[7] The department is now known as the department of children and families.

[8] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) . . . Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person.

"(b) . . . Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of

because it was evidence of a common scheme on the defendant's part to abuse his daughter sexually.

The defendant did not deny that, in 1992, the victim had touched his penis, but he claimed that the touching was accidental. Specifically, he claimed that he was sleeping nude when the victim crawled over and grabbed his penis. Accordingly, the defendant objected to the admission of the evidence on several grounds. First, he contended that the two events were not sufficiently similar because the 1992 incident, which he acknowledged, involved the victim touching him and the present charges relating to the 1999 incident, which he denied, involved him touching the victim. Second, the defendant contended that there was not sufficient evidence to prove that the 1992 incident was *misconduct*, rather than simply an accidental touching as he claimed. Third, he argued that the statements of the victim, which would be introduced through the testimony of the victim's mother and Cersonsky, constituted inadmissible hearsay and double hearsay. Specifically, the defendant contended that the trial court should not allow evidence of the 1992 incident because the testimony relating to that incident consisted of multiple layers of hearsay, and each layer could not be admitted independently.[9]

The trial court ruled that testimony concerning the 1992 incident could be admitted as evidence of a common scheme. In doing so, the court noted that, under *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994),

mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

[9] Section 8-7 of the Connecticut Code of Evidence provides: "Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." The defendant claimed that the hearsay statements at issue in the present case did not have the usual guarantees of reliability necessary to be admitted pursuant to the exceptions to the hearsay rule.

the standard for the admission of prior misconduct is more liberal to show a common scheme or pattern in sex related crimes than in other crimes.[10] The trial court stated that it was inclined to find the 1992 and 1999 incidents sufficiently similar to show a common scheme because the 1992 incident involved the same victim, an allegation of sexual abuse, and it was not too remote in time. The court concluded that, although the state had the burden of substantiating that the incident had occurred, in the present case there was no dispute that the incident had occurred, and the issue of whether the touching was accidental or initiated by the defendant was for the jury to determine. In response to the defendant's assertion that testimony by the victim's mother and Cersonsky relaying the victim's statements constituted hearsay and double hearsay, the court concluded that the victim had no memory of the incident and was, therefore, unavailable to testify about it. The trial court further concluded that the victim's statements through her mother and Cersonsky independently were admissible under the medical treatment exception to the hearsay rule.

Thus, over the defendant's continued objection, the victim's mother and Cersonsky testified about the 1992 incident. The victim's mother testified that, in 1992, when the victim was approximately two and one-half years old, she was carrying the child on her hip when the victim groped her breast. She stopped the victim from doing so and told her that the groping "wasn't nice." The victim's mother testified that the victim had responded, "I'm not going to tell you that I touch daddy's pee-pee." When the victim's mother later confronted the defendant about the victim's statement, the defendant

---

[10] The *Kulmac* criteria provide that the prior offense must: (1) have been committed upon persons similar to the prosecuting witness; (2) be similar to the offense charged; and (3) not be too remote in time. *State* v. *Kulmac*, supra, 230 Conn. 62.

informed her that he had been lying down wearing a pair of shorts when the victim crawled over and grabbed his penis.[11] The defendant explained that he had been upset about the behavior and had told the victim not to do it again. Although the victim's mother testified that, at that time, she did not believe anything inappropriate had happened, she took her daughter to be examined by Cersonsky to determine whether the victim had been abused sexually.

Cersonsky testified, on the basis of his office notes, that the victim's mother had relayed to him several statements the victim spontaneously had made at different periods of time prior to the examination. Specifically, he stated that the victim's mother had told him that the victim said, "I played with daddy's pee-pee," "I'm not going to tell you I played with daddy's pee-pee because he told me not to," and, "he likes when I do it."[12] Cersonsky testified that his examination of the victim had revealed no evidence of sexual abuse, but also that he could not conclude that the child had not been sexually abused. Cersonsky further testified that, in accordance with his obligations under General Statutes § 17a-101, he reported the suspected abuse to the department. The trial court instructed the jury during the testimony of both Cersonsky and the victim's mother that the evidence was being admitted for the limited purpose of proving a common scheme and that it could not to be used to prove that the defendant had a propensity to commit the 1999 crime charged or that

---

[11] The defendant testified at trial that he had been sleeping naked when the victim reached over and grabbed him. The defendant's mother also testified that the defendant had told her he was sleeping naked when the victim grabbed him.

[12] The record reflects that the victim's mother testified only to the one statement by the victim, namely, "I'm not going to tell you I touch daddy's pee-pee." Neither defense counsel nor the state questioned the victim's mother regarding her recollection of the additional statements contained in Cersonsky's notes.

he must have committed the 1999 crime because he had engaged in the conduct alleged in the 1992 incident.

The jury returned a verdict of guilty on one count of sexual assault in the first degree and two counts of risk of injury to a child.[13] In accordance with the jury's verdict, the court sentenced the defendant to five and one-half years imprisonment followed by six and one-half years of special parole with lifetime sex offender registration.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia,[14] that the trial court improperly had admitted uncharged misconduct evidence and hearsay testimony related to that incident. *State* v. *Aaron L.*, supra, 79 Conn. App. 399. The defendant claimed that the trial court improperly had failed to determine whether his conduct regarding the 1992 incident was wrongful, rather than innocent, and had failed to balance the probative value of the evidence against its prejudicial effect. Id., 410–12. The defendant contested as hearsay and double hearsay: (1) the victim's statement to her mother that, "I'm not going to tell you I touch daddy's pee-pee"; and (2) the victim's mother's statement to Cersonsky that the victim said: "I'm not going to tell you that I touch daddy's pee-pee because he told me not to," "I played with daddy's pee-pee," and "he likes it when I do it." Id., 415; see id., 407.

The Appellate Court affirmed the judgment of conviction, concluding that the trial court had not abused its discretion in admitting the evidence. Id., 401–402. With respect to the 1992 prior uncharged misconduct evi-

---

[13] The defendant was acquitted on one count of sexual assault in the first degree and one count of risk of injury to a child.

[14] The defendant also claimed that the trial court improperly had restricted his cross-examination of the victim and that the cumulative effect of the trial court's evidentiary rulings violated his state and federal constitutional rights to confrontation. *State* v. *Aaron L.*, supra, 79 Conn. App. 399. These issues are not part of this certified appeal.

dence generally, the court concluded that the evidence was material and relevant because there was no dispute that the victim had touched the defendant's penis in 1992, and there were notable similarities between the 1992 incident and the charges at issue in the defendant's trial. The court noted that "[i]n both situations, either the defendant or the victim touched the other's sexual organs while the victim was visiting the defendant in his parents' home when either the defendant or the victim was in a relative state of undress or asleep." Id., 411. The Appellate Court also noted the seven year span between the incidents at issue, but observed that the defendant had left Connecticut shortly after the 1992 incident occurred and that the 1999 charge had arisen less than one year after his return. Id. The court therefore concluded that the 1992 incident was sufficiently similar to be probative on the issue of a common scheme. Id.

The Appellate Court further concluded that, although the trial court had not *expressly* balanced the probative value against the prejudicial nature of the evidence on the record, that balancing could be inferred from the trial court's rulings. Id., 412–13. In affirming the trial court's determination that the evidence of the 1992 incident was more probative than prejudicial, the Appellate Court considered the highly prejudicial nature of such evidence in sexual assault cases, the pivotal effect of the evidence in bolstering the victim's credibility, which was the central issue at trial, and the striking similarities between the prior offense and the charged offense. Id., 413–14.

Turning to the hearsay portion of the defendant's claim, the Appellate Court concluded that the statements the victim's mother had made to Cersonsky and Cersonsky's testimony regarding those statements properly were admitted under the medical treatment

exception to the hearsay rule.[15] Id., 415. Conversely, the court held that the victim's statement to her mother should not have been admitted under the medical treatment exception because the statement had not been made for the purpose of seeking medical treatment. Id., 416, 419. The court concluded, however, that the statement was admissible under the residual exception to the hearsay rule because the statement was reliable and its admission was necessary. Id. In applying the residual exception, the Appellate Court concluded that admission of the victim's statement to her mother was necessary because the victim was unavailable to testify about the 1992 incident due to her complete inability to recall the incident. Id., 420. The court further concluded that the statement was reliable and was supported by sufficient guarantees of trustworthiness because, among other reasons, it was completely spontaneous and the victim employed age-appropriate terminology.[16] After rejecting the defendant's remaining claims, the Appellate Court affirmed the judgment of conviction. This certified appeal followed.

The defendant claims that the Appellate Court improperly concluded that: (1) the victim's statement to her mother was admissible under the residual exception to the hearsay rule because the statement was not supported by the requisite guarantees of trustworthi-

---

[15] The Appellate Court further concluded that Cersonsky's notes could be admitted under the business records exception to the hearsay rule. *State* v. *Aaron L.*, supra, 79 Conn. App. 418–19.

[16] In holding that the victim's statement to her mother—"I'm not going to tell you I touch daddy's pee-pee"—was reliable, the Appellate Court also considered the credibility of Cersonsky and the victim's mother, as well as the reliability of the victim's statement—"[daddy] likes it when I do it"—based on the fact that it is not developmentally appropriate for a two year old child to know, without adult influence, that a man derives pleasure from having his penis touched. *State* v. *Aaron L.*, supra, 79 Conn. App. 420–21. For the reasons we discuss subsequently herein; see footnote 20 of this opinion; we do not consider these factors in addressing the issue on appeal in this court.

ness;[17] and (2) there was sufficient evidence of the 1992 incident for it to have been introduced as evidence of a common scheme or plan because the state should have been required to prove the misconduct by clear and convincing evidence, and there was not sufficient proof that the prior conduct was wrongful. In response, the state contends that the victim's statement was reliable because, among other reasons, the statement was spontaneous and, there is no evidence that the victim had a motive to implicate her father falsely or to fabricate the statement.[18] The state further contends that no heightened burden of proof is required because adequate protection against the admission of unduly prejudicial prior misconduct evidence already is afforded by the current standard—that the evidence be material and relevant, and that the probative value outweigh the prejudicial nature of the evidence. We agree with the state.

Before addressing the merits of the defendant's claims, we set forth the applicable standard for our

[17] We note that the defendant does not challenge the ability of the Appellate Court to affirm the decision of the trial court admitting the victim's statement to her mother on the basis of an exception to the hearsay rule other than the one relied on by the trial court. In other words, he does not assert that a reviewing court cannot consider whether it "can [still] sustain the admission of the evidence if other proper grounds exist for admission of the statement[s]." *State* v. *Williams*, 48 Conn. App. 361, 367, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998); see *State* v. *Lucas*, 63 Conn. App. 263, 270 n.7, 775 A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001); see also *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 869, 797 A.2d 1146 (if residual exception properly was applied to statements, then trial court's improper admission of them under medical treatment exception was harmless error), cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). The defendant's challenge is not to the court's consideration of the residual exception, rather its application of the exception under the facts of this case.

[18] The state also claims that the trustworthiness of the victim's statement is bolstered by Cersonsky's credibility and the statement, "[daddy] likes it when I do it," because such a comment is decidedly adult in nature. For the reasons noted in footnote 20 of this opinion, we also decline to consider these arguments in our analysis.

review. Unless an evidentiary ruling involves a clear misconception of the law,[19] "[t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 454, 832 A.2d 626 (2003).

I

The defendant first claims that the Appellate Court improperly concluded that the victim's statement to her mother was admissible under the residual exception to the hearsay rule.[20] Thus, the only statement before us

---

[19] Indeed, in this case, because it was evaluating whether the trial court properly ruled that the statement at issue fell within the medical treatment exception to the hearsay rule, a pure question of law, the Appellate Court conducted a de novo review, concluding that the trial court's ruling was legally incorrect.

[20] The defendant does not challenge in this appeal the Appellate Court's conclusion that the victim's *other* statements, offered through Cersonsky's testimony, properly were admitted under the medical treatment and business record exceptions to the hearsay rule. Therefore, we do not consider those statements. Furthermore, to the extent that the state relies on these statements to support its claims regarding the trustworthiness of the one statement at issue on appeal, we reject its contentions. Only factors related to the *circumstances surrounding the making of the challenged statement* may be considered to support the reliability of the hearsay statement at issue. *State* v. *Merriam*, 264 Conn. 617, 639, 835 A.2d 895 (2003) ("evidence corroborating the truth of a hearsay statement may not be considered in evaluating the statement's reliability"); id., 642 ("the trial court improperly considered [the testifying witness'] credibility in evaluating the trustworthiness of the victim's statement"). Like with the various specific exceptions to the hearsay rule, under the residual exception, the circumstantial guarantees of trustworthiness are those that existed at the time the statement was made, not those that could be added using hindsight. *Idaho* v. *Wright*, 497 U.S. 805, 822, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990).

in this appeal is the victim's statement to her mother, "I'm not going to tell you that I touch daddy's pee-pee."

We begin with our well established principles regarding the application of the hearsay rule in criminal cases. "An out-of-court statement offered to establish the truth of the matter asserted is hearsay. E.g., *State* v. *Dehaney*, 261 Conn. 336, 355, 803 A.2d 267 (2002). As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. E.g., id. A hearsay statement that does not fall within one of the traditional exceptions to the hearsay rule nevertheless may be admissible under the residual exception to the hearsay rule provided that the proponent's use of the statement is reasonably necessary and the statement itself is 'supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule.' Conn. Code Evid. § 8-9; accord *State* v. *Hines*, 243 Conn. 796, 809, 709 A.2d 522 (1998).

"Beyond these general evidentiary principles, the state's use of hearsay evidence against an accused in a criminal trial is limited by the confrontation clause of the sixth amendment. In defining the specific limits of the confrontation clause, the United States Supreme Court consistently has held that the confrontation clause does not erect a per se bar to the admission of hearsay statements against criminal defendants. E.g., *Idaho* v. *Wright*, 497 U.S. 805, 813, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990); see also id., 814 ('[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, [the] Court has rejected that view as unintended and too extreme' . . . ). At the same time, '[a]lthough . . . hearsay rules and the Confrontation Clause are generally designed to protect similar values, [the court has] also been careful not to equate the Confrontation Clause's prohibitions with the general rule

prohibiting the admission of hearsay statements. . . .
The Confrontation Clause, in other words, bars the
admission of some evidence that would otherwise be
admissible under an exception to the hearsay rule.'
. . . [Id.]

"For purposes of the confrontation clause, 'hearsay
statements are admissible if (1) the declarant is unavail-
able to testify, and (2) the statement bears adequate
indicia of reliability. *Ohio* v. *Roberts,* 448 U.S. 56, 66,
[100 S. Ct. 2531], 65 L. Ed. 2d 597 (1980)[21] . . . . A
statement is presumptively reliable if it falls within a
firmly rooted hearsay exception. [Id.] A hearsay excep-

---

[21] In *State* v. *Rivera,* 268 Conn. 351, 362–64, 844 A.2d 191 (2004), we
recognized that the United States Supreme Court overruled *Roberts* to the
extent that it applied to "testimonial" hearsay statements. See *Crawford* v.
*Washington,* 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In
reaching its conclusion, the Supreme Court drew a distinction between
testimonial hearsay statements and those deemed nontestimonial. Id., 50–51.
Although the court declined to define the terms "testimonial" and "nontesti-
monial," it considered three core classes of testimonial statements. Id.,
51–52. These classes include: (1) ex parte in-court testimony or its functional
equivalent; (2) extrajudicial statements contained in formalized testimonial
materials; and (3) statements that were made under circumstances which
would lead an objective witness reasonably to believe that the statements
would be available for use later at trial. Id.

The statement in question in the present case does not fall within any of
the classes of testimonial statements discussed by the court in *Crawford.* The
statement was not ex parte in-court testimony or its functional equivalent; it
was not contained in any formalized testimonial materials such as affidavits,
depositions or prior testimony; and the statement was not a confession
resulting from a custodial examination. Unlike a statement to the police,
the circumstances under which the statement was made in the present case
would not lead an objective witness reasonably to believe that the statement
would be available for use at a later trial. Rather, the victim, who was two
and one-half years old at the time, made the statement spontaneously and
to a close family member more than seven years before the defendant was
arrested. In light of these circumstances, the victim's communication to her
mother clearly does not fall within the core category of ex parte testimonial
statements that the court was concerned with in *Crawford.* See id., 51
("[a]n accuser who makes a formal statement to government officers bears
testimony in a sense that a person who makes a casual remark to an acquain-
tance does not"). Accordingly, because the victim's statement was nontesti-
monial in nature, application of the *Roberts* test remains appropriate.

tion is firmly rooted if it rest[s] upon such solid foundations that admission of virtually any evidence within [it] comports with the substance of constitutional protection. Id. Evidence admitted under such an exception thus is presumed to be so trustworthy that adversarial testing would add little to its reliability. *Idaho* v. *Wright,* [supra, 497 U.S. 821]. Evidence that does not fall within a firmly rooted hearsay exception, however, is inadmissible under the Confrontation Clause *absent a showing of particularized guarantees of trustworthiness. Ohio* v. *Roberts,* [supra, 66].' . . . *State* v. *Schiappa,* 248 Conn. 132, 158–59, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999)." (Emphasis added.) *State* v. *Merriam,* 264 Conn. 617, 633–35, 835 A.2d 895 (2003).

With these principles in mind, we turn to the case at hand. We first consider whether the victim's statement to her mother was admissible under any of the firmly rooted exceptions to the hearsay rule. The trial court admitted the statement under the medical treatment exception to the hearsay rule and the state offers this exception as an alternate ground for affirming the Appellate Court's ruling. The medical treatment exception applies to statements "made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." Conn. Code Evid. § 8-3 (5). The Appellate Court correctly concluded that this exception cannot apply to the victim's statement to her mother because the victim was not seeking either medical treatment or advice, nor was she describing a past or present symptom of any kind. Although Connecticut courts previously have applied this exception to statements made to persons other than a physician, those statements were made in furtherance of medical treatment. See,

e.g., *State* v. *Maldonado*, 13 Conn. App. 368, 369, 536 A.2d 600 (Spanish speaking security guard at hospital permitted to interpret for child victim of sexual assault), cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988).

The statement in question did not fall into a firmly established exception to the hearsay rule; therefore, we now turn to the residual exception. See *State* v. *Sharpe*, 195 Conn. 651, 664, 491 A.2d 345 (1985). In order for the residual exception to apply, there must be a reasonable necessity for the admission of the statement, and the statement must be supported by the equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule. Conn. Code Evid. § 8-9; *State* v. *Sharpe*, supra, 664; see also *Ohio* v. *Roberts*, supra, 448 U.S. 66. In the present case, the defendant is not challenging the necessity of the admission due to the victim's lack of recollection of the 1992 incident. Rather, he contends that the victim's statement is not supported by sufficient guarantees of trustworthiness and reliability.

In evaluating the trustworthiness of a similar statement in *State* v. *Merriam*, supra, 264 Conn. 639–40, this court considered five factors suggested by the United States Supreme Court in *Idaho* v. *Wright*, supra, 497 U.S. 805. These factors include: "(1) the degree of spontaneity inherent in the making of the statements; (2) consistent repetition by the declarant; (3) the declarant's mental state; (4) use of terminology not within the average ken of a child of similar age; and (5) the existence of a motive to fabricate or lack thereof." *State* v. *Merriam*, supra, 639. The Supreme Court in *Wright* "emphasized that the 'unifying principle' underlying the enumerated factors is that they 'relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.' . . . The court further noted, however, that the list of factors it had

identified was not exclusive, that it was not endorsing any particular 'mechanical test for determining particularized guarantees of trustworthiness under the [Confrontation] Clause' . . . and that 'courts have considerable leeway in their consideration of appropriate factors.' " (Citations omitted.) Id., 639–40, quoting *Idaho* v. *Wright*, supra, 821–22.

Applying these principles to the present case, we agree with the state that the victim's statement was spontaneous. The statement, "I'm not going to tell you that I touch daddy's pee-pee," does not logically relate to the event that preceded it—her mother admonishing the victim that it was not nice to grope her breast. Even in cases in which the victim's statement "did not come out of the blue"; *Swan* v. *Peterson*, 6 F.3d 1373, 1381 (9th Cir. 1993); courts have considered the statement spontaneous and therefore more reliable when it was not made in response to any question posed. See, e.g., id. Thus, the fact that the victim's statement in the present case was a non sequitur suggests that it was reliable. See id. (concluding that statement that "[m]y daddy puts his penis in my mouth and icky milk comes out" was reliable in part because three year old victim spontaneously volunteered information while playing game of peekaboo); *Government of the Virgin Islands* v. *Morris*, 191 F.R.D. 82 (D.V.I. App. Div. 1999) (concluding that statement was reliable in part because six year old victim spontaneously volunteered information about abuse to aunt while aunt read story to victim).

Indeed, "the more spontaneous the statement, the less likely it is to be a product of fabrication, memory loss, or distortion." *Doe* v. *United States*, 976 F.2d 1071, 1080 (7th Cir. 1992). Here, no motive to fabricate the statement is suggested by the record, and the defendant does not offer one.

Also supporting the reliability of the victim's statement is the terminology that she used. The victim

referred to the defendant's "pee-pee," a term within the average ken of a child of similar age, and the victim's mother testified that the victim commonly used that term at the time of the incident to refer to both male and female genitalia. Such "childish terminology" has been considered to have "the ring of veracity and is entirely appropriate to a child of . . . tender years." *United States* v. *Nick*, 604 F.2d 1199, 1204 (9th Cir. 1979).

The defendant cites several reasons to doubt the reliability of the victim's statement. Those reasons include the purported ambiguity of the victim's statement,[22] the victim's youth, the fact that the victim's mother originally did not believe any impropriety had occurred in 1992, the absence of physical evidence,[23] and the

[22] The defendant claims that the victim's statement, "I'm not going to tell you I touch daddy's pee pee," is inconsistent with the statements contained in Cersonsky's testimony. In our view, it is a mischaracterization to say that the slight differences in the wording and content of the statements are inconsistencies. Furthermore, as previously noted; see footnote 20 of this opinion; we must consider this statement *independent* of the statements contained in Cersonsky's testimony, as the defendant himself recognizes that they are separate levels of hearsay.

[23] As we already have noted, the use of corroborating evidence to support the reliability of a statement "would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Idaho* v. *Wright,* supra, 497 U.S. 823. Whether the fact that the victim's mother originally did not believe that any impropriety had occurred and the absence of physical evidence are factors that could be used to *undermine* the reliability of the statement, represents a question not specifically addressed by the United States Supreme Court in *Wright* or this court in *State* v. *Merriam,* supra, 264 Conn. 617. Even if the consideration of such evidence were permissible, however, neither factor overcomes the Appellate Court's legal determination of the statement's reliability. First, the mother's opinion regarding the victim's credibility must be taken in context with the mother's conduct. Her opinion was given in response to a question concerning why she had not reported the statement to the police. In the same testimonial passage, however, the victim's mother also stated that she nevertheless questioned the defendant about the alleged incident and then took the victim to be examined by her pediatrician, reporting the victim's statement to him

unavailability of the victim for cross-examination. We disagree that these factors should have compelled the Appellate Court to conclude, as a matter of law, that the victim's statement was unreliable.

A victim's youth and the use of "age-appropriate language" in describing sexual abuse consistently have been considered supportive of, rather than detrimental to, a statement's reliability. See *United States* v. *Juvenile NB*, 59 F.3d 771, 777 (8th Cir. 1995) ("[a] declarant's young age is a factor that may substantially lessen the degree of skepticism with which we view [her] motives, and mitigates in favor of the trustworthiness and admissibility of her declarations" [internal quotation marks omitted]); *Swan* v. *Peterson,* supra, 6 F.3d 1380 (three year old victim's youth and use of "age-appropriate language" when describing abuse considered in support of reliability); *United States* v. *Farley,* 992 F.2d 1122, 1125 (10th Cir. 1993) (five year old victim's youth and use of "childish terminology" when describing abuse considered in support of reliability); *United States* v. *Grooms*, 978 F.2d 425, 427 (8th Cir. 1992) ("the childish terminology . . . used in [victim's] description of the abuse . . . has the ring of veracity" [internal quotation marks omitted]); *United States* v. *George*, 960 F.2d 97, 100 (9th Cir. 1992) (fact that twelve year old victim referred to dates of abuse by days of week as would be expected of child her age considered in support of reliability).

Finally, the defendant's contention that the victim's statement is unreliable because she was unavailable for

as well as to the department. Second, the absence of any physical evidence is meaningless in this case in light of the nature of the touching and has no bearing on whether the defendant initiated the touching. Finally, we note that some of the defendant's family members testified that the victim could be untruthful and that she could exaggerate at times. That testimony, however, was directed at the victim at or around the time of trial, not when she made the statement that is at issue here.

cross-examination undermines the very purpose of the residual hearsay exception—to admit an *otherwise* reliable statement when that statement's admission is necessary and the declarant is unavailable. The reason for the victim's unavailability in the present case was her inability to recall an event that had happened when she was two and one-half years old. That reason has little bearing on the reliability of the statement itself. See *Idaho* v. *Wright,* supra, 497 U.S. 825 ("[a]lthough such inability [to communicate to the jury at the time of trial] might be relevant to whether the earlier hearsay statement possessed particularized guarantees of trustworthiness, a per se rule of exclusion would not only frustrate the truth-seeking purpose of the Confrontation Clause, but would also hinder States in their own 'enlightened development in the law of evidence' "); compare *United States* v. *Barrett,* 8 F.3d 1296, 1300 (8th Cir. 1993) (reason for unavailability was declarant's inability to know difference between truth and lies); *State* v. *Oquendo,* 223 Conn. 635, 668, 613 A.2d 1300 (1992) (circumstances suggested that declarant had motive to fabricate); *O'Shea* v. *Mignone,* 35 Conn. App. 828, 838, 647 A.2d 37 (absence of any information in record to enable court to determine trustworthiness and reliability of statement of anonymous witness), cert. denied, 231 Conn. 938, 651 A.2d 263 (1994).

Accordingly, we conclude that the Appellate Court properly determined that the victim's statement to her mother was supported by sufficient guarantees of trustworthiness and, therefore, was admissible under the residual exception to the hearsay rule.

II

The defendant next claims that the Appellate Court improperly concluded that there was sufficient evidence of the 1992 incident for it to be introduced as evidence of a common scheme or plan to sexually abuse

the victim. The defendant acknowledges that this court has a well established test that trial courts must apply before admitting such evidence. He contends, however, that, because of the highly prejudicial nature of such evidence, we should engraft an additional requirement—that the trial court must find, by clear and convincing evidence, that the prior misconduct in fact occurred. He further contends that there was insufficient evidence that his prior conduct in this case was wrongful and, hence, did not constitute *mis*conduct.

We begin with the well established principles regarding the admission of prior misconduct evidence. "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368 (1970). Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. *State* v. *Brown*, 199 Conn. 47, 56, 505 A.2d 1225 (1986). On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. . . . *State* v. *Esposito*, [192 Conn. 166, 169, 471 A.2d 949 (1984)] . . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . *State* v. *Mandrell*, 199 Conn. 146, 151, 506 A.2d 100 (1986)." (Citation omitted; internal quotation marks omitted.) *State* v. *Kulmac*,

supra, 230 Conn. 60–61; see also Conn. Code Evid. §§ 4-1, 4-3 and 4-5 (b).[24]

" 'When evidence of other offenses is offered to show a common plan or design the marks which the uncharged and the charged offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other.' *State* v. *Esposito*, supra, 192 Conn. 172. To guide this analysis, we have held that '[e]vidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness.' Id., 169–70. We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes. *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976)." *State* v. *Kulmac*, supra, 230 Conn. 61–62.

The issue of whether the trial court, before admitting prior misconduct evidence, must find by a heightened standard of proof that the prior misconduct in fact occurred was addressed by the United States Supreme Court in *Huddleston* v. *United States*, 485 U.S. 681, 685, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). In *Huddleston*, the defendant appealed from his conviction of one

---

[24] Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

See footnote 8 of this opinion for the text of § 4-5 (b) of the Connecticut Code of Evidence.

count of possessing stolen property in interstate commerce. Id., 682–84. The trial court allowed the jury to hear evidence regarding two prior transactions in which the defendant either had sold or had attempted to sell similar stolen goods. Id., 683. While the defendant did not deny possessing any of the goods in question, he contended that all of the goods had been provided by the same source and that he had no knowledge that any of the goods were stolen. Id., 683–84. Thus, like the case at hand, *the defendant conceded that the prior conduct had occurred, but denied that the conduct was wrongful.* The defendant claimed that the trial court should have been required to make a preliminary finding that the government had proved the prior misconduct by a preponderance of the evidence before it submitted the evidence to the jury. Id., 682. He further claimed that the government had failed to meet that burden because it failed to prove that the goods in the prior transactions had been stolen. Id., 686.

The Supreme Court concluded that, in determining whether there is sufficient evidence to introduce an act of prior misconduct, "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether *the jury* could reasonably find the conditional fact . . . by a preponderance of the evidence." (Emphasis added.) Id., 690. The court further explained that the defendant's position was inconsistent with the Federal Rules of Evidence because those rules "establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. . . . [T]he trial judge [can] exclude relevant evidence if, among other things, 'its probative value is substantially outweighed by the danger of unfair prejudice.' [The

rules] address specific types of evidence that have generated problems. Generally, [the] . . . Rules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced. . . . The text contains no intimation, however, that any preliminary showing is necessary before such evidence may be introduced for a proper purpose. If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility . . . ." Id., 687–88.

We find the United States Supreme Court's reasoning persuasive. Much like the Federal Rules of Evidence, under our Code of Evidence, the protection against unfair prejudice emanates not from a requirement of a preliminary finding of fact by the trial court, but from four other sources: first, from the requirement under § 4-5 (b) that the evidence satisfy one of the prior misconduct exceptions and, thus, be offered for a proper purpose; second, from the relevancy requirement under § 4-1; third, from the assessment that the trial court must make under § 4-3 to determine whether the probative value of the similar acts evidence is outweighed by its potential for unfair prejudice; and fourth, from the limiting instructions the trial court is required to give the jury under § 1-4[25] that the evidence is to be considered only for the proper purpose for which it was admitted. See *Huddleston* v. *United States*, supra, 485 U.S. 691–92. Following the application of that test,

---

[25] The commentary to § 1-4 of the Connecticut Code of Evidence explains in relevant part that, "[a]bsent a party's request for a limiting instruction, upon the admission of evidence, the court is encouraged to instruct the jury on the proper scope of the evidence or inquire whether counsel desires a limiting instruction to be given. See *Rokus* v. *Bridgeport*, 191 Conn. 62, 67, 463 A.2d 252 (1983); cf. *State* v. *Cox*, 7 Conn. App. 377, 389, 509 A.2d 36 (1986). Nothing precludes a court from excluding evidence offered for a limited purpose or taking other action it deems appropriate when a limiting instruction will not adequately protect the rights of the parties."

whatever inferences should be drawn from the defendant's prior conduct are for the *jury* to determine.[26]

We appreciate the defendant's concerns regarding the nature of prior misconduct evidence and the need to protect defendants from unfair prejudice resulting from its admission. As we explained previously, however, adequate protection against unfair prejudice already is afforded by the existing structure of our rules of evidence. Accordingly, we decline to adopt a rule requiring that the trial court make a preliminary finding by clear and convincing evidence that prior misconduct occurred before submitting that evidence to the jury. Thus, once a trial court determines that an act of prior misconduct is material and relevant to the charges at trial, and that its probative value outweighs its prejudicial effect, the evidence is admissible.

The defendant claims, however, that we should decline to adopt the approach taken in *Huddleston* because that decision was based on the federal rule, which the defendant claims favors the admission of prior misconduct evidence, whereas our rule generally bars the admission of such evidence except in a few narrowly drawn circumstances. The defendant cites no case law or differences in language in the two rules, nor do we perceive any, to support any substantive distinction. Indeed, the only difference we note is organizational. By combining into one section the prohibition against the use of prior misconduct evidence to prove character or conduct in conformity with the limited purposes for which such evidence is admissible,

---

[26] The defendant's argument that the state must prove by any particular burden of persuasion that the prior misconduct in fact occurred essentially blurs the distinction between the admissibility of evidence and the sufficiency of evidence. Whether evidence is admissible is a question of law that is determined according to the rules of evidence. Whether the burden of persuasion has been met and the weight to be accorded to the evidence are questions of fact to be determined by the trier of fact.

rule 404 (b) of the Federal Rules of Evidence[27] simply expresses the same principles *collectively* that are expressed *separately* in subsections (a) and (b) of § 4-5 of the Connecticut Code of Evidence.[28] Accordingly, there is no substantive difference between the pertinent federal and Connecticut rules that warrants a deviation from the standard set forth in *Huddleston*.

We also note that more than one half of the jurisdictions in the country similarly have rejected a heightened standard of proof for the admission of such evidence. See *Akin* v. *State*, 698 So. 2d 228, 235 (Ala. Crim. App. 1996); *Ayagarak* v. *State*, 2003 Alaska App. Lexis 73, *12–13 (April 23, 2003); *State* v. *Gano*, 92 Haw. 161, 172, 988 P.2d 1153 (1999); *State* v. *Kay*, 129 Idaho 507, 515, 927 P.2d 897 (1996); *People* v. *Hansen*, 313 Ill. App. 3d 491, 500, 729 N.E.2d 934 (2000); *Clemens* v. *State*, 610 N.E.2d 236, 242 (Ind. 1993); *State* v. *Jones*, 464 N.W.2d 241, 243 (Iowa 1990); *Daniel* v. *Commonwealth*, 905 S.W.2d 76, 78 (Ky. 1995); *State* v. *Dean*, 589 A.2d 929, 933 (Me. 1991); *Commonwealth* v. *Wotan*, 37 Mass. App. 727, 732–33, 643 N.E.2d 62 (1994), rev'd on other grounds, 422 Mass. 740, 665 N.E.2d 976 (1996); *People* v. *Miller*, 198 Mich. App. 494, 496, 499 N.W.2d 373 (1993); *Lester* v. *State*, 692 So. 2d 755, 779 (Miss. 1997); *State* v. *Bickham*, 917 S.W.2d 197, 198–99 (Mo. App. 1996); *State* v. *Paulson*, 250 Mont. 32, 38, 817 P.2d 1137 (1991); *State* v. *Dukette*, 145 N.H. 226, 229, 761 A.2d 442 (2000);

---

[27] Rule 404 (b) of the Federal Rules of Evidence provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

[28] See footnote 8 of this opinion for the relevant text of § 4-5 of the Connecticut Code of Evidence.

*State* v. *Delgado*, 112 N.M. 335, 340, 815 P.2d 631 (1991); *State* v. *Haskins*, 104 N.C. App. 675, 679–80, 411 S.E.2d 376 (1991); *State* v. *Knight*, 131 Ohio App. 3d 349, 352, 722 N.E.2d 568 (1998); *State* v. *Hayward*, 327 Or. 397, 408–409, 963 P.2d 667 (1998); *Commonwealth* v. *Odum*, 401 Pa. Super. 8, 13, 584 A.2d 953 (1990); *State* v. *Wright*, 593 N.W.2d 792, 798 (S.D. 1999); *State* v. *Robinson*, 158 Vt. 286, 290, 611 A.2d 852 (1992); *Pavlick* v. *Commonwealth*, 27 Va. App. 219, 227–28, 497 S.E.2d 920 (1998); *State* v. *McGinnis*, 193 W. Va. 147, 155, 455 S.E.2d 516 (1994); *State* v. *Gray*, 225 Wis. 2d 39, 59–60, 590 N.W.2d 918 (1999). Although the defendant points to several other jurisdictions in which a heightened standard of proof has been adopted for the admission of prior misconduct evidence; see *State* v. *Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194 (1997) (adopting standard of proof of clear and convincing evidence); *Groves* v. *United States*, 564 A.2d 372, 374 (D.C. App. 1989) (same); *Phillips* v. *State*, 591 So. 2d 987, 989 (Fla. App. 1991) (same); *State* v. *Jackson*, 625 So. 2d 146, 149 (La. 1993) (same); *Ayers* v. *State*, 335 Md. 602, 632, 645 A.2d 22 (1994) (same); *State* v. *Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996) (same); *State* v. *Wilson*, 5 Neb. App. 125, 136, 556 N.W.2d 643 (1996) (same); *State* v. *Hernandez*, 170 N.J. 106, 120, 784 A.2d 1225 (2001) (same); *State* v. *Smith*, 300 S.C. 216, 218–19, 387 S.E.2d 245 (1989) (same); *State* v. *Parton*, 694 S.W.2d 299, 302–303 (Tenn. 1985) (same); *Harrell* v. *State*, 884 S.W.2d 154, 159 (Tex. Crim. App. 1994) (adopting standard of proof beyond reasonable doubt);[29] we disagree with these jurisdictions that a heightened standard of proof is necessary to protect defendants adequately from the highly prejudicial

---

[29] The defendant also cites *State* v. *McGinnis*, supra, 193 W. Va. 147, as having adopted a preponderance of the evidence standard for the admission of prior misconduct evidence. The defendant misinterprets that decision. The *McGinnis* court reaffirmed West Virginia's adoption of the *Huddleston* standard. See id., 155 ("this Court . . . [has] explicitly adopted and applied the standard and criteria discussed in *Huddleston*").

nature of prior misconduct evidence. We are confident that our trial courts will be vigilant in protecting defendants from the admission of such prejudicial matter when its probative value is outweighed by its prejudicial effect.

The defendant further claims that, regardless of which standard of proof we apply to the admission of prior misconduct evidence, the state could not meet *any* burden of proof because there is *no* evidence that his prior conduct was *misconduct*. In making this assertion, the defendant misunderstands the trial court's role in determining the admissibility of prior misconduct evidence. As explained previously, once all other requirements have been satisfied—relevancy, materiality, and probative value outweighs prejudice—the trial court only need determine that there is sufficient evidence for the *jury* to find that the defendant committed the prior act.[30] *Huddleston* v. *United States*, supra, 485 U.S. 690. Whatever inferences should be drawn from the defendant's prior conduct are for the *jury* to determine. In the rare case when there is no doubt that the prior conduct occurred, but there is no evidence that reasonably would support a finding that the conduct was wrongful, that evidence would be excluded under the relevancy and materiality requirements.

Furthermore, we disagree with the defendant's claim that there was no evidence that his 1992 conduct was wrongful. As we previously noted, the defendant concedes that the victim touched his penis in 1992. The victim's statements contained in Cersonsky's notes—

---

[30] In *State* v. *Wilson*, 199 Conn. 417, 450, 513 A.2d 620 (1986), we held that the trial court had abused its discretion in admitting previous injuries to the victim as evidence of prior misconduct on the part of the defendant in the absence of *any* showing that the injuries had been inflicted by the defendant. In the present case, however, it is undisputed that the victim touched the defendant's penis. Thus, *Wilson* is distinguishable from the present case.

"I'm not going to tell you that I touch daddy's pee-pee because he told me not to," and "he likes it when I do it"—provide a reasonable basis for the jury to have found that the defendant had initiated the contact. The former statement implies that the defendant instructed his daughter not to disclose the touching to anyone else. The defendant's desire for secrecy reasonably could have been construed as an attempt to hide a wrongful act. The latter statement similarly suggests that the defendant's conduct was wrongful because, as Cersonsky testified, it is developmentally inappropriate, in the absence of adult influence, for a two and one-half year old child to know that a man derives pleasure from having his penis touched. Thus, there was evidence from which the jury reasonably could have concluded that the defendant's 1992 conduct was wrongful. Therefore, we conclude that the Appellate Court properly determined that the trial court did not abuse its discretion in concluding that there was sufficient evidence of the 1992 incident for it to be introduced as evidence of a common scheme or plan to sexually abuse the victim.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

BORDEN, J., with whom ZARELLA, J., joins, concurring. I agree with and join the majority opinion in all respects. I write separately as to part I of the majority opinion, however, to highlight the point that, in a future case such as this one, in which we are asked to apply the residual exception to the hearsay rule to the statement of a very young child, this court would benefit greatly from some expert learning about how such children typically recall and relate what happens to them.

I first reiterate that, on the basis of the applicable law and the facts of this case, the resolution of the

admissibility of the victim's statement to her mother is properly resolved as coming within the parameters of the residual exception to the hearsay rule. Furthermore, this record does not contain, either by way of evidence presented to the trial court or by way of reference to any studies in scientific literature, any information about how reliable very young but verbal children may be. My concern, however, arises from the fact that the factors specified in *Idaho* v. *Wright*, 497 U.S. 805, 821–22, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990), and adopted by this court in *State* v. *Merriam*, 264 Conn. 617, 635, 639–40, 835 A.2d 895 (2003), and applied in the present case, appear to be based, not on any scientific evidence about how very young children, at an age when they are just beginning to be verbal, perceive and relate things, but on notions of general experience and intuition. Those notions may well be perfectly accurate; but they also may not be accurate. Although I am a father and grandfather, I simply do not know whether what are regarded in the case law as hallmarks of reliability of young children's statements are valid. Some science may help to resolve those doubts.

I do not think that such material is unavailable. Indeed, some of it apparently was in the record of the state proceedings in *Idaho* v. *Wright*, supra, 497 U.S. 813; see id. ("[n]oting that expert testimony and child psychology texts indicated that children are susceptible to suggestions and are therefore likely to be misled by leading questions," state court determined that child's statements were inadmissible under residual exception to hearsay rule). Perhaps the next time we are asked to determine whether a statement of a child of such a young age is reliable enough to be admitted without cross-examination, we will be able to do so on the basis of more than general notions of experience and our intuition.