******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* REGINALD MILLER
(AC 35417)

Lavine, Bear and West, Js.*

*Argued March 7—officially released June 3, 2014*

(Appeal from Superior Court, judicial district of Hartford, geographical area number twelve, Fuger, J.)

*Allison M. Near*, assigned counsel, for the appellant (defendant).

*Maria del Pilar Gonzalez*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jaclyn Preville*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Reginald Miller, appeals from the judgment of conviction of conspiracy to commit forgery in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-139 (a) (1), aiding and abetting in forgery in the second degree in violation of General Statutes §§ 53a-8 and 53a-139 (a) (1), conspiracy to commit larceny in the fifth degree in violation of General Statutes §§ 53a-48 (a) and 53a-125a, and attempt to commit larceny in the fifth degree in violation of General Statutes §§ 53a-49 and 53a-125a.[1] On appeal, the defendant claims that the court improperly admitted evidence of uncharged misconduct. Additionally, the state alerted both the defendant and this court to the trial court's failure to give an accomplice instruction to the jury. Thereafter, we directed the parties to file supplemental briefs addressed to this issue. The defendant now also claims that the trial court committed plain error in failing to give the jury an accomplice instruction. We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, and procedural history are necessary to our consideration of the defendant's claims. The defendant and Loretta Berenz had known each other for some time and, previously, had been in an intimate relationship. Berenz called the defendant by his street name, "Cookie." Berenz and the defendant used and purchased drugs together, and engaged in other criminal activity. The defendant approached Berenz about cashing fraudulent checks, and Berenz agreed to participate. Each time the defendant asked her to cash a fraudulent check, she did so.

A couple of days before March 7, 2012, the defendant and Berenz were "plotting on cashing [a] check that [the defendant] printed up," and the defendant picked up Berenz on March 7 to take her to the Farmington Bank in Glastonbury to cash the check. When they reached the bank, the defendant gave Berenz the check, which was made out to her, and instructed her on what to do once inside the bank. The defendant was supposed to wait for Berenz in a parking lot across the street from the bank. Berenz went into the bank and gave the check to a teller who began to process it but then took the check into an office. Berenz knew there was a problem, walked out of the bank and smoked a cigarette while she telephoned the defendant. She could not see his car in the parking lot, and her calls repeatedly went directly into voice mail. The police then arrived, and Berenz initially refused to talk to them.

Berenz was arrested and taken to the Glastonbury Police Department, where she was fingerprinted. After the passage of several hours, Berenz realized that the defendant was not coming to get her, and she decided to talk to the police and explain what had happened.

Initially, she could not remember the defendant's full name, but could remember only his street name. She gave the police a full description of him, his car, and his address, however. She also gave the police his telephone number and showed them the call history from her telephone.

On March 22, 2012, Berenz spoke with Anthony Dejulius, a detective with the Manchester Police Department, because a warrant had been issued for her arrest for cashing another check that the defendant allegedly had made. At that time, Berenz remembered the defendant's full name and gave that information to Dejulius. Additionally, while being held at York Correctional Institution, Berenz spoke with Michael Furlong, a sergeant with the Glastonbury Police Department, giving him more information about the defendant and other checks that she allegedly had cashed for him. Thereafter, the defendant was arrested for his involvement in the March 7, 2012 check cashing incident.

Prior to the defendant's trial, Berenz, who had an extensive criminal history that dated back to when she was fourteen years old, pleaded guilty to charges related to the March 7, 2012 incident. She was awaiting sentencing when she testified for the state at the defendant's trial. Following the presentation of evidence and closing argument, the jury found the defendant guilty of conspiracy to commit forgery in the second degree, aiding and abetting in forgery in the second degree, conspiracy to commit larceny in the fifth degree, and attempt to commit larceny in the fifth degree as a lesser included offense within the crime of aiding and abetting larceny in the fifth degree. Subsequently, the defendant pleaded guilty to the charge of being a persistent serious felony offender for having previously been convicted of larceny in the third degree as charged in a part B information. After accepting the verdict and rendering a judgment of conviction, the court sentenced the defendant to a total effective term of fifteen years incarceration, followed by five years of special parole. This appeal followed.

I

The defendant first claims that the court "erred by admitting uncharged misconduct evidence that the defendant engaged in a prior forgery with . . . Berenz."[2] He argues that "the evidence failed to satisfy any exceptions to Connecticut Code of Evidence § 4-5, and its prejudicial impact far outweighed its probative value." Specifically, the defendant contends that "[i]n addition to testifying that the defendant furnished the forged check that she attempted to cash at Farmington Bank, [Berenz] testified that one month prior to the incident in question, the defendant had provided her with a forged check to cash at the Manchester Wal-Mart. No other detail was provided about the Wal-Mart incident.[3] The simple allegation that the defendant con-

spired with her on a prior occasion to commit forgery, without any detail connecting it to the crime charged, rendered the evidence irrelevant and improper as evidence of a common plan or scheme." (Footnote added.) The state argues that the court properly admitted this evidence to show a common plan or scheme, and, in the alternative, to show intent and lack of mistake. We agree that the court properly admitted the testimony under the common plan or scheme exception.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (b) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Section 4-5 (b) of the Connecticut Code of Evidence provides, in relevant part: Evidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." (Citation omitted; internal quotation marks omitted.) *State* v. *Dillard*, 132 Conn. App. 414, 424, 31 A.3d 880 (2011), cert. denied, 303 Conn. 932, 36 A.3d 694 (2012).

"Our Supreme Court has identified two categories of common scheme or plan cases. See *State* v. *Randolph*, 284 Conn. 328, 343, 933 A.2d 1158 (2007). In the first category, which consists of what most accurately may be described as true common scheme or plan cases, the nature of the charged and uncharged crimes combined with connecting evidence, if any, gives rise to a permissive inference that an overall scheme or plan existed in the defendant's mind, and that the crimes were executed in furtherance of that plan. In the second category of cases, which consists of what most accurately may be described as signature cases, the existence of a modus operandi, logo, or signature, which, when considered in combination with other factors, such as the proximity of time and place of commission, gives rise to a permissive inference that the crimes were executed in furtherance of an overall common scheme or plan. . . . Id."

(Internal quotation marks omitted.) *State* v. *Dougherty*, 123 Conn. App. 872, 878, 3 A.3d 208, cert. denied, 299 Conn. 901, 10 A.3d 521 (2010); see also C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 4.19.13, p. 168. We conclude that under the facts of the present case, the first category applies.

A review of Berenz' trial testimony reveals that she testified that she had given information to the Manchester police after discovering that a warrant had been issued for her arrest because of another instance where she had "cashed a phony check that [the defendant] had made." Following an objection to that testimony and a discussion outside of the presence of the jury, she then explained that she had given information to the Manchester police "because of another check that [she] had cashed . . . [that she] had got[ten] from [the defendant]." The defendant claims that this specific testimony should have been excluded because the uncharged misconduct was not shown to have sufficient factual similarities to the charged misconduct, and, therefore, it was not relevant to show common plan or scheme. He further argues that the uncharged misconduct evidence was overly prejudicial and that it was not harmless. We disagree.

Unlike signature misconduct, the admissibility of true common plan or scheme misconduct "does not depend on the degree of similarity shared by the charged and uncharged crimes, but, rather, on the extent to which it is probative of the existence of an overall plan in the defendant's mind." *State* v. *Randolph*, supra, 284 Conn. 356. "[T]he nature of the charged and uncharged crimes, combined with connecting evidence, if any, may give rise to an inference that a common scheme or plan existed." Id.

In the present case, the defendant was charged with crimes related to the forgery and cashing of a check by and with Berenz at the bank. The evidence showed that the defendant created the forged check, contacted Berenz to cash the check, selected where Berenz would cash the check, gave Berenz the check, and drove Berenz to the location he had selected. The uncharged misconduct pertained to another instance where the defendant created the forged check and gave it to Berenz to cash. In each instance, the connecting evidence was the involvement of the defendant and Berenz, the defendant's coconspirator in this case, the creation of the forged check, and the defendant's delivery of the forged check to Berenz for her to cash. We conclude that the nature of the charged and uncharged misconduct, and the connecting evidence, properly gave rise to an inference that a common scheme or plan existed in the defendant's mind. See id.

The defendant next argues that the probative value of the uncharged misconduct evidence was outweighed by its prejudicial effect. Specifically, he argues that

allowing the jury to hear that he gave Berenz a forged check on more than one occasion "had the effect of depicting the defendant as one with the propensity to commit the crime[s] charged." We disagree.

"We will make every reasonable presumption in favor of upholding the trial court's [evidentiary] ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . The question, moreover, is not whether the evidence is highly probative, but simply whether its probative value outweighs undue prejudice." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 307 Conn. 689, 700–701, 59 A.3d 196 (2013).

Our Supreme Court "has identified four factors relevant to determining whether the admission of otherwise probative evidence is unduly prejudicial. These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." Id., 698.

The defendant argues that the uncharged misconduct evidence showed that he had a propensity to commit crimes similar to the ones charged, and that Berenz' testimony inflamed the jury's sympathy because she portrayed herself as a victim. We disagree and conclude that none of the factors relevant to determining whether the admission of otherwise probative evidence is unduly prejudicial are present in this case. Here, the court heard oral argument on the state's motion to introduce evidence of uncharged misconduct, and the court heard additional argument at the time the evidence was offered during Berenz' testimony. The court cautioned the state, limiting the questioning and the testimony of Berenz related to the instance of uncharged misconduct. Additionally, the court instructed the jury that the uncharged misconduct evidence was not admitted "to prove the bad character, propensity or criminal tendencies of the defendant . . . [but rather was] admitted solely to show or establish that the commission of the crimes follows a common plan or scheme or a system of criminal activity being engaged in by the defendant." In the absence of a record that demonstrates otherwise, "[w]e presume that the jury followed the instructions as given." *State* v. *Webster*, 308 Conn. 43, 58 n.11, 60 A.3d 259 (2013).

Reviewing the court's ruling with appropriate deference, we conclude that the defendant has failed to prove

that the court abused its discretion in permitting Berenz to testify about the prior incident of misconduct as evidence of a common plan or scheme.

## II

The defendant also claims that the trial court committed plain error in failing to give the jury an accomplice instruction despite the defendant's failure to request such an instruction or take an exception. Although we agree that the court committed error by failing to give an accomplice instruction, the defendant has failed to demonstrate that the error was harmful. Accordingly, we are not persuaded that there is any manifest injustice in this case.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . In *State* v. *Fagan*, [280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007)], we

described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–78, 60 A.3d 271 (2013).

The defendant contends that the only evidence against him was the testimony of his accomplice and coconspirator, Berenz, and that, therefore, the court's failure to instruct the jury on the unreliability of her testimony amounted to plain error, clearly harmful to him, and that a failure to reverse the judgment of conviction will result in manifest injustice. The state argues that although the court's omission of this instruction was error, and the error was obvious, it did not amount to plain error.[4] We agree that the error, although obvious, was not demonstrated by the defendant to be harmful, and, therefore, that there is no manifest injustice in this case.

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [When] it is warranted by the evidence, it is the court's duty to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he or she] assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose. . . .

"With respect to the credibility of accomplices, we have observed that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury. . . . Moreover, because an instructional error relating to general principles of witness credibility is not constitutional in nature . . . the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 823–24, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).

With these principles in mind, we conclude that the court committed error in this case by failing to give an accomplice instruction to the jury. Nevertheless, "the fact that the instruction . . . was mandated . . . does

not, in and of itself, establish the existence of manifest injustice necessary for plain error." *State* v. *Sanchez*, supra, 308 Conn. 83. In this case, the defendant has failed to demonstrate that he was harmed by the lack of an accomplice instruction.

Berenz testified that she and the defendant "plotted" to produce and cash the check on March 7, 2012. She admitted that the state had charged her in connection with her involvement in this crime, that she had pleaded guilty, and that she was awaiting sentencing. She stated that she had not been offered a deal by the state in exchange for her testimony and that she was not testifying in order to get a more lenient sentence. The defendant's attorney thoroughly cross-examined Berenz regarding her motives for testifying. The jury was aware that Berenz was incarcerated and awaiting sentencing. During closing argument, defense counsel also argued that Berenz' credibility was suspect and that the jury should keep in mind that she was awaiting sentencing. Defense counsel told the jury that it was the sole judge of credibility and that Berenz had a lengthy criminal record. She also told the jury to keep in mind that it should assess Berenz' motives for testifying, keeping her criminal record in mind.

Additionally, although the court failed to give a specific accomplice instruction, it did give a general credibility instruction telling the jury, in relevant part, that it must consider whether the witnesses had "any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case . . . ." The court also told the jury that Berenz was the defendant's coconspirator and accomplice, and that it could use her prior criminal record in assessing her credibility. It further instructed the jury that it was required to resolve issues of credibility and that it must use its common sense.

On the basis of the record, we agree with the state that the jury was apprised of the reasons why it should weigh Berenz' testimony carefully and thoroughly, and that the defendant has failed to demonstrate that the court's failure to give a specific accomplice instruction was harmful. Accordingly, we conclude that our affirmance of the judgment of conviction will not result in manifest injustice.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The conviction of conspiracy to commit larceny in the fifth degree was merged into the conviction of conspiracy to commit forgery in the second degree, and the court imposed sentence on the conviction of conspiracy to commit forgery in the second degree. The defendant did not raise an issue before the trial court or during this appeal with regard to the merger of the conviction of those charges. See *State* v. *Rosado*, 147 Conn. App. 688, 694 n.3, 83 A.3d 351, cert. denied, 311 Conn. 928, 86 A.3d 1058 (2014); *State* v. *Wright*, 144 Conn. App. 731, 748, 73 A.3d 828, cert. granted, 310 Conn. 945, 80 A.3d 907, 908 (2013). Accordingly, we do not rule on the propriety of

the merger.

² The state had filed a notice that it intended to present evidence of uncharged misconduct "as proof of a conspiracy . . . as well as evidence of a common plan or scheme and/or as a system of criminal activity." The defendant objected, thereby preserving this issue for our review.

³ A close review of the trial transcript reveals that Berenz did not state where this additional check cashing incident had occurred. The prosecutor referred to this as the Wal-Mart incident only during argument outside of the presence of the jury and in the notice of intent to present evidence of uncharged misconduct.

⁴ The state also argued during oral argument before this court that under our traditional use of the plain error doctrine, any error that amounts to plain error cannot be harmless because, in order for an error to amount to plain error, the error must result in a manifest injustice. Therefore, it argues, it would like our Supreme Court to reexamine *State* v. *Moore*, 293 Conn. 781, 823, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010), and clarify the decision. It also questions whether the failure to give an accomplice instruction could ever result in manifest injustice, especially because it does not implicate a constitutional right: "The fact that the failure to give an accomplice instruction does not even implicate a constitutional right; *State* v. *Brown*, 187 Conn. 602, [613–14], 447 A.2d 734 (1982); further undermines the suggestion that it nevertheless implicates that extremely rare type of right that is essential to a fundamentally fair and reliable result. Moreover, if affording [review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)] to nonconstitutional claims of instructional error regarding general principles of credibility 'trivialize[s] the constitution'; *State* v. *Bond*, 49 Conn. App. 183, 192, 713 A.2d 906, cert. denied, 247 Conn. 915, 722 A.2d 808 (1998); then transforming the plain error standard into a mere demonstration of harm, when it comes to those same, unpreserved, nonconstitutional claims, cannot help but trivialize the class of 'truly extraordinary' cases for which plain error is usually reserved."